IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| FRANK BUSKUEHL, | ) ) ) |
| *Plaintiff,* | ) ) |
| v. | ) ) |
| ERNIE HOWELL, *et al.* | ) No. 4:23-cv-00513-JMD ) ) |
| *Defendants.* | ) ) ) ) |

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Frank Buskuehl asserts that officers violated his right to be free from excessive force under the Fourth Amendment when they deployed a canine to assist in arresting him, struck him with a baton after he was on the ground, and failed to intervene to stop fellow officers from performing these actions. He also argues that the City of Arnold is liable for failing to train its officers to provide a warning before deploying a canine.

But officers arrested Buskuehl at a residence known as a hub for criminal activity, they knew Buskuehl had recent run-ins with the law and had previously resisted arrest, and Buskuehl failed to comply with officers' directives to get on the ground during the arrest. Other aspects of the situation made the situation volatile. When officers announced their presence, Buskuehl moved behind a building—and then toward the officers once they were only a few feet away. Another individual with a known criminal history was also present. The officers are entitled to qualified immunity for their alleged actions, and because Buskuehl cannot prove any constitutional violation, his claims of failure to intervene and

1

municipal liability necessarily fail. Defendants' motions for summary judgment are therefore granted. This case is dismissed.

**Background**

On a motion for summary judgment, a court views all facts in "the light most favorable to the nonmoving party." *Eastling v. BP Products N.A., Inc.*, 578 F.3d 831, 836 (8th Cir. 2009) (internal citation omitted). "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007). To the extent the parties disagree on certain facts, this Court views those facts in the light most favorable to Buskuehl. But because Federal Rule of Civil Procedure 56(a) requires a court to "grant summary judgment if the movant shows that there is no *genuine* dispute as to any material fact" (emphasis added), deference is owed to the nonmoving party's version of the facts only where those facts are not "blatantly contradicted by the record," *Scott,* 550 U.S. at 380.

The parties agree that on September 13, 2021, Detectives Ernie Howell, Amanda Gary, and Brian Wilson arrived at a residence in Arnold, Missouri, to arrest Frank Buskuehl on three outstanding felony warrants, including a felony warrant for resisting arrest. The officers did not activate the emergency lights or sirens on their unmarked vehicles. Howell and Gary were in their police-issued uniforms. It was dark when the officers arrived. Buskuehl was in the yard of the residence along with Ryan Mantler when the officers arrived. The detectives were familiar with Buskuehl and Mantler from prior law enforcement encounters, knew both individuals had criminal histories, and knew one of Buskuehl's three felony warrants was for resisting arrest.

Upon arriving at the residence, Howell observed and identified Buskuehl and Mantler in the side yard of the residence. According to a video submitted by the parties, Buskuehl

moved toward the back of the house, where he was either less visible or not visible. *See Scott*, 550 U.S. at 381 (permitting courts to take notice of indisputable video evidence). Howell exited his vehicle, yelled "Frank, put your hands up," retrieved his police dog, and ran into the yard. Buskuehl says that Gary ran onto the property at the same time, holding her TASER with the laser sight pointed ahead. The parties dispute when Gary drew her TASER, but they agree she pointed her TASER at Buskuehl during the interaction. Gary did not discharge her TASER.

Howell ran through the side yard in Buskuehl's direction and shouted "Dog! Dog! Dog!" One of the officers shouted, "Where's he at?" Buskuehl turned toward the front yard and said, "What's up? What's up?" Howell reached Buskuehl and stopped running. Buskuehl says this was five seconds after Howell yelled "Dog! Dog! Dog!" Buskuehl says that he asked, "what's going on, guys?" with his arms raised and his palms exposed. The videotape shows that Buskuehl's hands were raised, but not fully, and that he was gesticulating with them while communicating with the officers. *See Scott,* 550 U.S. at 381.

Buskuehl admits, and the video evidence reveals, that Howell and Gary repeatedly ordered Buskuehl to "get on the ground." Buskuehl said, "I'm not resisting," but he did not comply with the officers' repeated directive to get on the ground. Not only did he continue standing, but a video supplied by Buskuehl shows he began advancing toward one of the officers, who was only a few feet away from Buskuehl. Howell released the dog using the command "packen," and commanded him to apprehend Buskuehl using the "bite and hold" canine apprehension tactic. The dog obeyed Howell's command and bit Buskuehl on the arm. Buskuehl then dropped to the ground. About 30 seconds after the "packen" command, Howell gave the release command ("oust"), and the dog released Buskuehl.

3

Buskuehl contends that while the dog bit him and he was on the ground, Howell repeatedly hit him with an unidentified object that he assumes was a baton. Buskuehl supports this allegation with testimony from Mantler, who "saw Howell beating Plaintiff with a long, black stick that he recognized as a 'standard issue police baton.'" The Arnold Police Department makes standard-issue police batons available to its officers, and Gary admits that she was carrying her baton that night. Howell asserts that he was not carrying a baton. The officers' version of events is that Howell struck Buskuehl with a fist between the shoulder blades to compel Buskuehl to release his hands because, once on the ground, Buskuehl continued to struggle with the officers and placed his hands underneath his body. The officers then completed their arrest.

Buskuehl now sues under § 1983, alleging violations of the Fourth Amendment for excessive force by Howell and Gary; for failing to intervene by Gary; and for failure to train officers by the city, *see Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

## Standard of Review

The Court "shall grant" summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the Court "view[s] the facts and inferences in the light most favorable to the [nonmovant]," that party nonetheless retains an "obligation to come forward with specific facts showing that there is a genuine issue for trial." *Dahl v. Rice Cnty, Minn.*, 621 F.3d 740, 743 (8th Cir. 2010).

4

**Analysis**

**I.    Excessive Force Claim Against Howell**

Claims of excessive but nondeadly force during an arrest "are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). To determine whether an official violated the Fourth Amendment, courts must conduct a "fact-intensive inquiry in light of the specific context of the case." *Rohrbough v. Hall*, 586 F.3d 582, 587 (8th Cir. 2009) (cleaned up). Buskuehl asserts that Howell used excessive force against him by (1) deploying a police dog to help execute the arrest, and (2) beating him with a baton after he was already on the ground. In assessing each of these claims, the question is "whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." *Cole v. Bone*, 993 F.2d 1328, 1333 (8th Cir. 1993) (cleaned up).

**A.  Use of Dog to Execute Arrest**

Buskuehl contends that the overall circumstances involving the dog amount to excessive force. Because the use of a police canine is neither per se unreasonable, nor considered deadly force, *Kuha v. City of Minnetonka*, 365 F.3d 590, 597–98 (8th Cir. 2003), the Court is required to assess this claim under the multi-factor balancing test created by the Supreme Court in *Graham*. "[R]eview of excessive force claims involving police dogs is properly governed by the general standard established in *Graham* rather than the deadly force standard of [*Tennessee v. Garner*, 471 U.S. 1 (1985)]." *Kuha*, 365 F.3d at 598. *Graham* calls for courts to assess the "totality of the circumstances" when determining whether a particular use of force is legally "reasonable" under the Fourth Amendment. *Graham* also specifies three specific circumstances: (1) the severity of the crime at issue, (2) whether the

5

suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. Assessing the totality of the circumstances, and construing all factual disputes in Buskuehl's favor, he cannot establish constitutional liability.

First, the severity of the crimes at issue supports a conclusion that some degree of force was justified. Officers were arresting Buskuehl for not just one, but three felonies: resisting arrest during a prior incident, possession of a controlled substance, and operating a stolen motor vehicle. Where officers believed Buskuehl had committed a "series" of felonies, "[t]he fact that [he] had not yet committed a more serious felony did not preclude the deputies from using force to restrain him." *Roell v. Hamilton Cnty.*, 870 F.3d 471, 481 (6th Cir. 2017); *see also McKenny v. Harrison*, 635 F.3d 354, 359–60 (8th Cir. 2011) (upholding the use of a TASER in response to what officers reasonably interpreted as an attempt to evade arrest, even though "the arrest warrants were based on minor offenses").

Buskuehl argues that these three felonies suggest only that a person struggles with substance abuse, not that he is potentially dangerous. But the multitude of felonies weighs in favor of concluding that the force used here was justified. And while certain felonies no doubt are more serious than others, the legislature made all these offenses felonies. It is not for courts to "substitute our judgment for that of the legislature in determining what is deemed a serious crime." *Richter v. Fairbanks*, 903 F.2d 1202, 1205 (8th Cir. 1990). What's more, Buskuehl's argument is self-defeating. Drug addiction presents inherent dangers to officers. "Stated plainly, addiction biologically robs drug abusers of their judgment, causing them to act impulsively and ignore the future consequences of their actions." *United States v. Hendrickson*, 25 F. Supp. 3d 1166, 1173 (N.D. Iowa 2014) (citation omitted). Buskuehl's

6

history of drug use made it more likely the arrest would be "tense, uncertain, and rapidly evolving" and that officers would be "forced to make split-second judgments" when arresting him. *Graham*, 490 U.S. at 397. Officers were entitled to consider the need for heightened security measures in light of Buskuehl's history.

Next, the immediacy of the threat the officers faced further supports the use of force. Gary and Howell knew that Buskuehl had recently—and successfully—resisted arrest. They had reason to know Buskuehl was a substance abuser. The setting in which they were arresting Buskuehl was fraught with danger. Individuals had previously been arrested at the residence with firearms and drugs. Stolen vehicles had been recovered from the premises. The arrest took place at night. Buskuehl was not the only one at the scene with a known criminal history. He moved near the back of the house, where he was less visible, when officers first arrived. And he was only feet from officers when he advanced toward them after having refused to comply with their directives. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. A reasonable officer on the scene would understand the danger the totality of these circumstances present. *See generally Barnes v. Felix*, 605 U.S. 73 (2025) (unanimously holding that officers are not limited to considering the "moment of threat" and can instead consider all they know about a suspect in determining threat level).

The last *Graham* factor asks courts to consider whether the suspect was resisting or evading arrest by fleeing. *Graham*, 490 U.S. at 396. Here, too, the circumstances favor the officers. "[F]orce is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public."

7

*Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009). But "[w]hen a suspect is passively resistant, somewhat more force may reasonably be required." *Kohorst v. Smith*, 968 F.3d 871, 876 (8th Cir. 2020) (internal citation omitted). "The failure to follow police instruction may constitute passive resistance." *Id*. Here, two facts are especially relevant to assessing Buskuehl's resistance, and both facts favor the officers.

First, the officers were arresting Buskuehl for resisting arrest. Buskuehl argues that his arms were raised in compliance. But the video shows that Buskuehl's arms, although raised, were moving. *See Scott,* 550 U.S. at 380. Moreover, "earlier facts and circumstances may bear on how a reasonable officer would have understood and responded to later ones . . . . Prior events may show, for example, why a reasonable officer would have perceived otherwise ambiguous conduct of a suspect as threatening." *Barnes*, 605 U.S. at 80. Because Buskuehl was being arrested for a previous incident of resisting arrest, a reasonable officer could interpret Buskuehl's arm movements differently (and less generously) than if Buskuehl had no prior incidents involving law enforcement.

Second, Buskuehl repeatedly defied the officers' directives to get on the ground. Buskuehl relies substantially on his statement to the officers that he was not resisting. But he was refusing their directives, and officers were not required to believe him in light of his outstanding warrant for resisting arrest. Whatever Buskuehl's arm position, it is clear from the parties' accounts and from the footage that Buskuehl did not get on the ground when repeatedly ordered to do so by both officers. Because a "failure to follow police instruction may constitute passive resistance," the Eighth Circuit has "upheld the use of force where a suspect . . . ignores commands from law enforcement." *Kohorst,* 968 F.3d at 876. This case is like *Mann v. Yarnell*, 497 F.3d 822 (8th Cir. 2007). There, officers deployed a canine

8

against an individual who was instructed to get on his stomach but instead remained on his side. *Id.* at 826. The Eighth Circuit ruled in the officers' favor. Likewise, Buskuehl repeatedly failed to comply with the officers' directions.

The totality of the circumstances, including each factor discussed in *Graham*, all establish that the officers' actions were not objectively unreasonable as a matter of law. The officers were faced with a person wanted on three felony warrants (including a recent felony resisting arrest), who was noncompliant and moving in an obscured area when the officers arrived, who approached the officers when they were within a few feet, and who refused repeated commands to get on the ground—all at night at a house known to be a hub for criminal activity with at least one other person around with a known criminal record. In light of all these circumstances, the Court "cannot say that 'no reasonably competent officer' would have" done what the officers did here. *Kuha*, 365 F.3d at 603 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Against all this, Buskuehl argues that the officers failed to warn him that he might be apprehended with the dog's assistance, which he says was objectively unreasonable under the Fourth Amendment. That argument fails for two reasons.

First, the officers did warn him. The parties agree (and the video confirms) that Howell yelled "Dog! Dog! Dog!" as he ran through the side yard in Buskuehl's direction. And when Buskuehl approached one of the officers, he was only a few feet away from the officer and the dog. Buskuehl did not get on the ground as he was repeatedly instructed to do. He was on notice that the officers might use the dog if he failed to comply. Having made Buskuehl aware that they might use the dog, officers were not required to warn Buskuehl again that further failure to comply could lead to use of the dog. *Cf. Dimock, v. City of*

9

*Brooklyn Ctr.*, 124 F.4th 544, 554 (8th Cir. 2024) (affirming qualified immunity for officers who used deadly force against a noncomplying suspect whom they had repeatedly told, "Get down on the ground").

Second, the cases on which Buskuehl relies concern use of dogs in the context of a search for a suspect. In those cases, "the presence or absence of a warning is a critical fact in virtually every excessive force case involving a police dog." *Kuha*, 365 F.3d at 599. That is because of the need to "enable innocent persons to exit the area and afford suspects an opportunity to surrender." *Id.* But there is a big difference between using a canine to track and find a hiding suspect and deploying a canine that is in plain view to assist in arresting a noncomplying suspect. Hiding suspects may not know that a canine is present and may be compelled to reveal their location if armed with the knowledge that a canine is about to be deployed to find them. But a noncomplying suspect has "already made the decision not to surrender peacefully and [is] not entitled to a warning that further resistance may trigger the use of the police dog visible to [him] to secure his surrender." *Mortensbak v. Butler*, 102 F. Supp. 3d 1085, 1098 (D.S.D. 2015). Once a subject has already decided not to comply with police directives (especially when a suspect is already aware of the police dog), the logic of cases like *Kuhn* ceases to apply. An additional warning cannot be required in every case where police use a canine to help execute an arrest. As the District of South Dakota aptly noted: "[s]uch a rule would create untenable circumstances because it could logically be extended to any use of force in similar situations." *Id.* at 1098.

At the very least, the officers are entitled to qualified immunity, which "shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly

10

established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Here, because Howell's use of a canine to help execute Buskuehl's arrest "was objectively reasonable in light of the facts and circumstances confronting the officer," *Smith v. Kansas City, Missouri Police Dept.*, 586 F.3d 576, 581 (8th Cir. 2009), he did not violate Buskuehl's statutory or constitutional rights. Further, because it was not clearly established that the Constitution requires an additional warning before commanding a canine to bite a suspect when that suspect is plainly aware of the canine, Howell is protected by qualified immunity.

### B. Use of Baton to Execute Arrest

Buskuehl next contends that one officer struck him with a baton and that this use of force was excessive. Use of more than *de minimis* force against "a person [who] is not suspected of a serious crime, is not threatening anyone, and is neither fleeing nor resisting arrest" is unreasonable. *Mitchell v. Kirchmeier*, 28 F.4th 888, 898 (8th Cir. 2022) (collecting cases). But "[l]aw enforcement officers may use physical force to subdue an arrestee when he fails to comply with orders to lie still during handcuffing." *Brossart v. Janke*, 859 F.3d 616, 625 (8th Cir. 2017). Determining whether a reasonable officer could have believed, based on a suspect's behavior, that a suspect was noncompliant is a question of law "for resolution by the court, not by a jury," *Kelsay v. Ernst*, 933 F.3d 975, 981 (8th Cir. 2019), and qualified immunity extends to an officer's "reasonably unreasonable" conclusions, *id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 643–44 (1987)).

The parties dispute whether Howell used a baton. Howell testified that he does not carry a baton and that he struck Buskuehl with a closed fist because Buskuehl placed his hands underneath his body, making it difficult to place Buskuehl in handcuffs. Buskuehl

11

alleges that Howell used a baton to strike him and provides some evidence to support this allegation. Accepting Buskuehl's version of the facts as true for this qualified-immunity analysis, Buskuehl's claim still fails because Howell's use of force was constitutionally reasonable.

Buskuehl appears to argue that no force was reasonable at all. But striking a suspect to induce him to permit an officer to execute an arrest is not per se unconstitutional. *See, e.g., Mann*, 497 F.3d at 827. And Buskuehl provides little argument or evidence about the amount of force here. In his briefing, he has not identified any evidence of injuries from a baton or fist suggesting that the officers struck him more than necessary to secure an arrest. He instead identifies only injuries from the dog bite, asserts that he was compliant, and attempts to explain any perceived noncompliance from his perspective. What Buskuehl offers "amounts to mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions." *Id.* at 827 (cleaned up). Because "[a]n officer is entitled to use the force necessary to effect an arrest where a suspect at least appears to be resisting," *Kohorst,* 968 F.3d at 876 (internal quotation marks omitted), the relevant question is whether a reasonable officer could have determined that striking Buskuehl was reasonably necessary to execute an arrest.

The answer is yes. Even if Buskuehl were correct that he was not resisting arrest, "a reasonable officer could have believed that [he] was not compliant." *Kelsay*, 933 F.3d at 981. Buskuehl admits that he was "writhing on the ground in pain." From the perspective of a reasonable officer, Buskuehl's refusal to present his hands for handcuffing could reasonably be interpreted as resisting officers. Reasonableness is assessed based on objective actions and inactions visible or available to the officer, not a plaintiff's or officer's subjective thoughts.

12

"Whether a suspect's resistance is intentional does not impact how a reasonable officer would interpret the suspect's behavior." *Kohorst,* 968 F.3d at 876; *see also Wertish v. Krueger*, 433 F.3d 1062, 1067 (holding that police officers acted objectively reasonably in manhandling a person in diabetic shock because a reasonable officer could interpret the man to have been resisting officers); *Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012) (holding that officers were entitled to qualified immunity where arrestee would not present hands for arrest even though arrestee claims his struggles were due to an effort to breathe, as "[e]ven if [the arrestee's] motive was innocent, the deputies on the scene reasonably could have interpreted [his failure to present his hands to deputies] as resistance and responded with an amount of force that was reasonable to effect the arrest").

The officers were not acting within a vacuum. They were arresting a person on a felony charge of resisting arrest who had already refused to comply with the officers' directives to get on the ground. Even assuming Buskuehl's conduct was ambiguous, a reasonable officer would interpret Buskuehl's conduct in light of Buskuehl's (very recent) failure to comply with officers' directives. To make matters worse, the situation was volatile: the arrest occurred at night outside a known hub for criminal activity, and both Buskuehl and the other person present (Mantler) were known to have had recent run-ins with the law.

It is clear from the indisputable evidence that using a baton to subdue a noncomplying suspect would have been constitutionally reasonable in this highly volatile and charged situation. And Buskuehl provides no evidence that the use of the baton went beyond what was reasonably appropriate for securing an arrest. Regardless of whether Howell used a baton or a closed fist, he is entitled to qualified immunity.

II.   **Excessive Force Claim Against Gary**

Buskuehl next claims that Gary "assisted and supported Howell and Yoda [the police dog] as they attacked, beat, and mauled" him by pointing a law enforcement weapon against him during the incident. At least for purposes of the summary judgment motion, the parties agree the weapon was a TASER. For several reasons, Gary's conduct did not exceed the limits of the Fourth Amendment.

First, in his deposition testimony, Buskuehl admits that he was unaware that Gary pointed a TASER at him during the incident and only learned of this later, when he was "able to watch the video." A seizure occurs within the meaning of the Fourth Amendment when a person yields to officers in response to a show of authority. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991) ("An arrest requires *either* physical force [] *or,* where that is absent, *submission* to the assertion of authority."); *see also Cole,* 993 F.2d at 1332. Even assuming that some unreasonably excessive display of authority might violate the Fourth Amendment, a person cannot yield in response to a display of authority if he is unaware of that display.

Even if Buskuehl had noticed the weapon pointed at him during the encounter, Gary did not violate his rights because a reasonable officer could determine the situation was tense, volatile, and potentially threatening. Pointing a TASER is not per se unreasonable. *See Pollreis v. Marzolf*, 66 F.4th 726, 731 (8th Cir. 2023) (finding it not unreasonable to point a TASER at a calm and nonthreatening person not suspected of committing any crime and not actively resisting, where "a reasonable officer in [that] situation would be understandably concerned for his own safety"). Officers may brandish weapons when confronted with a threat but must stop once it is clear there is no longer a threat. *Wilson v. Lamp*, 901 F.3d 981, 990 (8th Cir. 2018)). According to Buskuehl's version of events, Gary's weapon was pressed to

14

the back of his head during the chaos that unfolded.  Buskuehl does not allege that Gary continued pointing her weapon after he had been handcuffed or once it was clear that he was complying.

Even if Buskuehl could establish that Gary violated his rights under the Fourth Amendment, those rights were not clearly established.  A TASER has far less destructive potential than a firearm, and while "[t]he Eighth Circuit has recognized that an officer who points a gun at a suspect may, under certain circumstances, violate that person's right to be free from excessive force[,] . . . [it] has yet to hold, though, that the same rule applies to a taser." *LeFever v. Castellanos*, No. 4:20CV3066, 2022 WL 16925686, at *20 (D. Neb. Nov. 14, 2022), *aff'd sub nom. LeFever v. Dawson Cnty. Sheriff's Dept.*, 109 F.4th 1100 (8th Cir. 2024) (internal citations omitted).  Pointing the TASER was reasonable, and it did not violate any clearly established law.  Gary is doubly entitled to qualified immunity because Buskuehl fails to overcome either aspect of qualified immunity.  *Nord v. Walsh Cnty.*, 757 F.3d 734, 738 (8th Cir. 2014).

### III.    Failure to Intervene

Buskuehl further alleges that Gary is liable for not intervening to stop (1) the canine takedown maneuver and (2) the physical strikes that followed.  It is "clearly established that an officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment." *Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009).  But for a police officer to be held liable for failure to intervene, two elements must be satisfied: "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Id.* (internal citation omitted).

15

But "there is no duty to prevent the *constitutional* use of *reasonable* force." *McManemy v. Tierney*, 970 F.3d 1034, 1039 (8th Cir. 2020). And as this Court has already found, Howell's uses of force were consistent with constitutional requirements. A finding of reasonable force is "fatal" to the first element of a claim for failure to intervene. *Hicks v. Norwood*, 640 F.3d 839, 843 (8th Cir. 2011). Because no excessive force was used and no clearly established right was violated, Buskuehl's failure to intervene claim must fail. Summary judgement is proper.

### IV. *Monell* Liability

Finally, Buskuehl claims that the City of Arnold is liable for both officers' use of force under *Monell*. Municipalities can be held liable for official policies that cause a constitutional tort, but not for respondeat superior liability. *Monell*, 436 U.S. at 691. But "for municipal liability to attach, individual liability first must be found on an underlying substantive claim." *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011) (internal citation omitted). Because this Court has found that this case lacks a predicate violation, there is also no *Monell* liability.

**IT IS HEREBY ORDERED** that defendants' motions for summary judgment [ECF 50, ECF 52] are **GRANTED**. Defendant's motion to exclude expert witness [ECF 55] is **DENIED** as moot. Plaintiff's motion for leave to disqualify and exclude expert witness [ECF 60] is **DENIED** as moot.

Dated this 23rd day of December, 2025

_____
JOSHUA M. DIVINE
UNITED STATES DISTRICT JUDGE